## UNITED STATES DISTRICT COURT FOR
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | Case No. 1:14 cv 664 |
| v. | * | |
| MEYER MANAGEMENT, INC. | * | **JUDGE BLACK** |
| Defendant. | * | |

### CONSENT DECREE

WHEREAS, Plaintiff, the United States of America, on behalf of the United States Department of Housing and Urban Development ("HUD") and the United States Environmental Protection Agency ("EPA"), has filed a complaint alleging that Meyer Management, Inc. (hereinafter referred to as "Defendant") violated Section 1018 of the Residential Lead-Based Paint Hazard Reduction Act of 1992 ("Section 1018"), 42 U.S.C. § 4852d; and

WHEREAS, Section 1018 and the implementing regulations, found at 24 C.F.R. Part 35, Subpart A, and 40 C.F.R. Part 745, Subpart F, require, among other things, that the owners and managing agents of residential properties subject to the law make certain disclosures and provide certain records concerning Lead-Based Paint and Lead-Based Paint Hazards to tenants when a new lease is entered into or, if the lease predates the effective date of Section 1018, at the first change to the terms of an existing lease, such as a rent increase; and

WHEREAS, Defendant owns and manages 136 residential properties in Cincinnati, Ohio constructed prior to 1978 containing approximately 224 units that are subject to this Consent Decree ("Subject Properties," as defined below); and

WHEREAS, the United States alleges that Defendant failed to make certain disclosures

1

required by Section 1018 in connection with transactions in approximately 136 Subject Properties in Cincinnati, Ohio; and

WHEREAS, the Defendant has agreed to perform certain Lead-Based Paint Hazard Reduction work in the Subject Properties; and

WHEREAS, the United States alleges it is entitled to seek injunctive relief in a judicial action, including, but not limited to, an order requiring Defendant to comply with Section 1018 prospectively, and an order requiring Defendant to abate Lead-Based Paint; and

WHEREAS, the United States alleges that Defendant is subject to administrative civil penalties by HUD and EPA for violations of Section 1018 of up to $16,000 per violation; and

WHEREAS, the United States and Defendant agree that settlement of the claims of the United States without further litigation is in the public interest and that entry of this Consent Decree is an appropriate means of resolving this matter; and

WHEREAS, the Parties agree that settlement and entry of this Consent Decree does not constitute admission or acknowledgement of liability or wrongdoing by Defendant, but is intended solely to settle all claims asserted by the United States against Defendant for violations of Section 1018 and the regulations thereunder on the terms set forth herein; and

WHEREAS, the United States and the Defendant agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest; and

NOW, THEREFORE, upon consent and agreement of the United States and the Defendant and the Court having considered the matter and been duly advised,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

2

## I. JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 4852d(b)(2) and has personal jurisdiction over the Defendant. Defendant consents to, and shall not challenge entry of, this Consent Decree and the Court's jurisdiction to enter and enforce this Consent Decree.

2.     Venue is proper in this Court pursuant to 42 U.S.C. § 4852d(b)(2) and 28 U.S.C. § 1391(b) and (c) because the lawsuit involves actions that took place, and the Subject Properties are located, in the Southern District of Ohio.

## II. PARTIES BOUND

3.     This Consent Decree shall apply to and be binding upon the United States and Defendant, and its successors and assigns.

4.     Defendant shall remain liable to the United States for all the obligations set forth in this Consent Decree regardless of whether Defendant sells or transfers a Subject Property. If Defendant intends to sell or transfer a Subject Property prior to termination of the Consent Decree, all of the following must occur before the sale or transfer: (a) all Lead-Based Paint Hazard Reduction work must be completed at the Subject Property as set forth in Section VII; (b) a clearance examination must be passed as set forth in Section VII and the clearance examination report ("Clearance Report") sent to HUD requesting an expedited approval due to the pending sale or transfer; and (c) HUD must approve the final Clearance Report. HUD shall provide its approval in writing.

## III. DEFINITIONS

5.     Unless otherwise expressly provided herein, terms used in this Consent Decree, which are defined in the Residential Lead-Based Paint Hazard Reduction Act of 1992 ("Act"), shall have the meaning given in the Act or in any regulations promulgated pursuant to the Act.

3

Whenever other terms listed below are used in this Consent Decree, the following definitions shall apply:

A.     **"Abatement"** shall mean any measure or set of measures designed to permanently eliminate Lead-Based Paint or Lead-Based Paint hazards. Abatement includes, but is not limited to the removal of Lead-Based Paint and dust-lead hazards, the permanent enclosure or encapsulation of Lead-Based Paint, the replacement of painted components or fixtures, or the removal or permanent covering of soil.

B.     **"Clearance Examination"** shall mean an activity conducted after Lead-Based Paint window replacement and other Lead-Based Paint Hazard Reduction Work, pursuant to Chapter 15 of the HUD Guidelines, have been performed to determine that the Lead-Based Paint Hazard Reduction Work are complete and that no settled dust-lead hazards exist in the unit, common areas, or in an exterior living area. The clearance process includes a visual assessment and collection and analysis of environmental samples. If Lead-Based Paint Hazard Reduction Work is performed in separate stages, clearance shall be achieved after each Hazard Reduction event before occupants are allowed to re-enter the work area. The appropriate clearance standards shall be the more restrictive of those set by the jurisdiction where the property is located or by Section 403 of the Toxic Substances Control Act ("TSCA") and its implementing regulations, 40 C.F.R. § 745.227(e)(8)-(9).

C.     **"Day"** shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

4

D.      **"Elevated Blood-Lead Level"** shall mean a blood-lead concentration equal to or greater than ten (10) micrograms per deciliter ($\mu$g/dl) as measured through a venous blood lead test.

E.      A **"force majeure event"** shall mean any event beyond the control of Defendant, its contractors, or any entity controlled by Defendant that delays the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay and the adverse effects of such delay to the greatest extent possible. "Force majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

F.      **"Friction Surface"** shall mean an interior or exterior surface that is subject to abrasion or friction, including, but not limited to window components, tight fitting or rubbing doors, cabinet doors and drawers, stairway treads and railings, floors, and similar components on outside decks and porches.

G.      **"Hazard Reduction Work"** shall mean measures designed to reduce or eliminate human exposure to Lead-Based Paint hazards through methods including Interim Controls or Abatement or a combination of the two.

H.      **"HUD Guidelines"** shall mean the edition of the "HUD Guidelines for the Evaluation and Control of Lead-Based Paint Hazards in Housing" in effect on the date the work is conducted pursuant to this Consent Decree.

5

I.     **"Impact Surface"** shall mean an interior or exterior surface that is subject to damage by repeated sudden force such as doorjambs, door trim, door stops, outside corners of walls, baseboards and shoe moldings, stair risers, and chair rails.

J.     **"Interest"** shall mean interest pursuant to 28 U.S.C. § 1961.

K.     **"Interim Controls"** shall mean a set of measures designed to temporarily reduce human exposure or likely exposure to Lead-Based Paint hazards, including specialized cleaning, repairs, maintenance, painting, temporary containment, ongoing monitoring of Lead-Based Paint hazards or potential hazards, and the establishment and operation of management and resident education programs.

L.     **"Lead Supervisor"** shall mean a person certified or licensed by EPA or an EPA-authorized state to perform lead abatement, supervise lead abatement workers who perform lead abatement, and prepare occupant protection plans and abatement reports as defined in 40 C.F.R. § 745.226 or the applicable state law and/or regulations in an EPA-authorized state.

M.     **"Lead-Based Paint"** shall mean paint or other surface coatings that contain lead equal to or in excess of 1.0 milligram per square centimeter or 0.5 percent by weight. If a Subject Property is located in a jurisdiction with a more stringent definition of Lead-Based Paint or safety standard, "Lead-Based Paint," as used herein, shall mean paint or other surface coatings that meet the more stringent standard.

N.     **"Lead-Based Paint Free"** shall mean housing that has been found to be free of paint or other surface coatings that contain lead equal to or in excess of 1.0 milligram per square centimeter or 0.5 percent by weight. If a Subject Property is located in a jurisdiction with a more stringent definition of Lead-Based Paint or safety standard, "Lead-Based Paint Free," as used herein, shall mean housing that meets the more stringent standard.

6

O.  **"Lead-Based Paint Free Certification"** shall mean a signed certification provided by the certified Lead-Based Paint inspector or Risk Assessor who conducted the Lead-Based Paint inspection that states:

> The results of this inspection indicate that no lead in amounts greater than or equal to 1.0 mg/cm² or 0.5 percent by weight (or the standard of the state where the property is located if more stringent) was found on any building components, using the inspection protocol in Chapter 7 of the HUD Guidelines for the Evaluation and Control of Lead-Based Paint Hazards in Housing. Therefore, this dwelling qualifies for the exemption in 40 C.F.R. Part 745 and 24 C.F.R. Part 35 for housing being leased that is free of Lead-Based Paint.

P.  **"Month"** shall mean thirty (30) consecutive days.

Q.  **"Paragraph"** shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

R.  **"Risk Assessor"** shall mean an individual who has been trained by an accredited training program and certified by EPA or an authorized state to perform Lead-Based Paint inspections and risk assessments. A Risk Assessor also samples for the presence of lead in dust and soil for the purposes of abatement clearance testing.

S.  **"Section"** shall mean a portion of this Consent Decree identified by a Roman numeral.

T.  **"Section 1018"** shall mean Section 1018 of the Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. § 4852d.

U.  **"Subject Property"** or **"Subject Properties"** shall mean the properties listed in Appendix 1 of this Consent Decree.

V.  **"Submit"** shall mean to dispatch via first class United States mail or other delivery service of demonstrated reliability and equivalent or better speed.

7

W.    **"United States"** shall mean the United States of America on behalf of HUD and EPA.

X.    **"Year of First Construction"** shall mean the year the first building on the property was constructed if the Subject Property has multiple buildings with different years of construction. Where a building was constructed over more than one year, this date shall be the date the construction permit was obtained, or if no permit was obtained, the year construction started.

## IV. GENERAL PROVISIONS

6.    By signing this Consent Decree, Defendant certifies that the Subject Properties listed in Appendix 1 of this Consent Decree are the only properties constructed before 1978 that Defendant owns, in whole or in part, or manages.

7.    By signing this Consent Decree, Defendant certifies that it has no business affiliates that own and/or manage residential properties constructed before 1978 other than those listed in this Consent Decree.

## V. COMPLIANCE WITH SECTION 1018

8.    Defendant shall comply with all requirements of Section 1018 and its implementing regulations.

9.    No later than two (2) Months after the Effective Date of this Consent Decree, Defendant shall provide to each tenant in the Subject Properties a "Protect Your Family from Lead in Your Home" pamphlet approved by EPA, EPA's "Renovate Right: Important Lead Hazard Information for Families, Child Care Providers and Schools" pamphlet, as well as a "lead paint disclosure form" which shall include, at a minimum, the following:

8

A.   A summary, drafted by the certified Lead-Based Paint inspector, of any information concerning the existence or non-existence of Lead-Based Paint and/or Lead-Based Paint Hazards in the unit, common areas, and/or exterior;

B.   A list of any available records or reports concerning Lead-Based Paint or Lead-Based Paint Hazards in the unit, common areas, and/or exterior and the opportunity to review such records or reports, or an indication of a lack of records or reports;

C.   A lead warning statement containing the specific language set forth in regulations promulgated pursuant to Section 1018; and

D.   Signatures and dates of both the landlord Defendant and tenant(s).

E.   In the event that Defendant has provided the above information to any tenant prior to the Effective Date of this Consent Decree, then Defendant shall not be required to duplicate such deliveries after the Effective Date, provided that such delivery occurred after September 1, 2012.

10.   Within seventy-five (75) Days of the Effective Date of this Consent Decree, Defendant shall provide written notice to HUD and EPA that it has complied with the requirements of Paragraphs 8 and 9 of this Consent Decree and, for each Subject Property, provide a copy of at least one disclosure form completed pursuant to Paragraph 9.

## VI. PAYMENT OF PENALTY

11.   Within thirty (30) Days of the Effective Date of this Consent Decree, Defendant shall pay a civil penalty of $7,500.00 to the United States as an administrative penalty for past violations of Section 1018.

12.   Payment of the civil penalty shall be rendered by electronic funds transfer to the United States Department of Justice, in accordance with current procedures, referencing DJ

Number 90-5-1-1-10787 and the civil action case name and case number of the Southern District of Ohio. Payment shall be made in accordance with instructions provided to Defendant by the Financial Litigation Unit of the U.S. Attorney's Office for the Southern District of Ohio. Any funds received after 5:00 p.m. (EST) shall be credited on the next business Day.

13. Notification that payment of the civil penalty has been made, referencing the DJ Number 90-5-1-1-10787 and the civil action case name and case number of the Southern District of Ohio, shall be provided in accordance with the notification provisions of Section XVII.

14. If Defendant fails to make any payment under Paragraph 11, Defendant shall be subject to Stipulated Penalties pursuant to Paragraph 23.A. of this Consent Decree. In addition, Interest shall accrue on any unpaid amounts until the total amount due has been received.

15. Defendant shall not deduct the civil penalty paid to the United States, or any Interest or Stipulated Penalties, paid under this Consent Decree from its federal, state, or local income taxes, and the United States does not in any way release Defendant from any claims arising under Title 26 of the United States Code.

## VII. WORK TO BE PERFORMED

16. The following Lead-Based Paint inspections or presumption of Lead-Based Paint, Lead-Based Paint Hazard Reduction Work, clearance, and ongoing operations and maintenance ("O&M") work shall be performed for units, common areas and exteriors for each Subject Property:

A. In lieu of performing a Lead-Based Paint inspection at each Subject Property, Defendant may presume Lead-Based Paint on all surfaces of that unit, common area, and exterior of each Subject Property. This includes, but is not limited to, all window components, all Friction and Impact Surfaces, as well as walls, ceilings and floors. If Defendant does not

10

presume Lead-Based Paint on all surfaces, as described above, a Lead-Based Paint inspection must be performed. The Lead-Based Paint inspection shall be performed either fully compliant with Chapter 7 of the HUD Guidelines or limited to paint-chip sampling or XRF testing of surfaces and components necessary to determine the presence or absence of lead-based paint which would require lead hazard reduction as outlined in paragraph 16.E(i). Either type of inspection shall include a visual evaluation for deteriorated paint. The resulting inspection report must provide a single page summary suitable for use as an attachment to the lead disclosure form for such inspected unit, common area, or exterior of a Subject Property, and clearly indicate whether the type of inspection performed was fully compliant with the HUD Guidelines or limited to surfaces sampled. For each Subject Property where a Lead-Based Paint inspection or limited lead-based paint inspection is performed, Defendant shall provide a copy of the inspection report to HUD no later than fifteen (15) days after receipt of such inspection report.

      B.      No later than four (4) Months after the Effective Date of this Consent Decree, Defendant shall provide copies to HUD and EPA of a plan for Lead-Based Paint Hazard Reduction work ("Hazard Reduction Plan") for all Subject Properties not found to be Lead-Based Paint Free. The Hazard Reduction Plan shall be prepared by a certified Lead Supervisor and shall include a list of property addresses where Hazard Reduction Work will occur, information about the components to be abated or controlled, the method of Abatement or Interim Control chosen, and the names of certified Abatement contractors who Defendant intends to have perform required Lead-Based Paint Hazard Reduction work. The certified Abatement contractor may be changed upon written notice to HUD and EPA. The Hazard Reduction Plan shall be prepared to ensure that Lead-Based Paint Hazard Reduction work and

window replacement required by this Section are conducted in accordance with Chapters 11, 12 and/or 13 of the HUD Guidelines, as applicable. The Hazard Reduction Plan shall also include specifications describing how the Defendant will cover bare soil in accordance with Chapter 11 of the HUD Guidelines. After review of the Hazard Reduction Plan, HUD shall, in writing: (a) approve, in whole or in part, the submission; (b) approve the submission with modifications; or (c) disapprove, in whole or in part, the submission, directing the Defendant to re-Submit the document after modification to address HUD's comments. If HUD disapproves of or requires revisions to the Hazard Reduction Plan, in whole or in part, Defendant shall amend and re-Submit to HUD a revised Hazard Reduction Plan which is responsive to the directions in HUD's comments, within twenty-five (25) Days of receiving such comments. The Hazard Reduction Plan must be approved by HUD before any work is performed at the Subject Properties, pursuant to this Consent Decree.

        C.     At least ten (10) business Days before the commencement of any Lead-Based Paint Hazard Reduction Work, Defendant shall ensure that the Lead Supervisor prepares a Notification for Lead-Based Paint Abatement Activities in accordance with State and/or local laws and/or regulations where the work is being performed, or 40 C.F.R. Part 227, as applicable. This notice shall contain the date when Lead-Based Paint Abatement activities will start, the name of the certified Lead Supervisor or firm performing the work, the property address, and a brief description of the Lead-Based Paint Abatement activities being performed. Defendant shall provide a copy of this notification to HUD and EPA electronically or via facsimile transmission in accordance with Paragraph 40 at the same time the notice is provided to the State and local jurisdiction.

D.      No later than two (2) Months after the approval of the Hazard Reduction Plan, Defendant shall Submit to HUD and EPA a plan for ongoing operations and maintenance ("O&M Plan"), including ongoing monitoring for all Subject Properties that are not Lead-Based Paint Free. O&M shall be performed for all components where Lead-Based Paint Hazard Reduction Work is performed and/or Lead-Based Paint was identified and not removed. After review of the O&M Plan, HUD shall, in writing: (a) approve, in whole or in part, the submission; (b) approve the submission with modifications; or (c) disapprove, in whole or in part, the submission, directing the Defendant to re-Submit the document after modification to address HUD's comments. If HUD disapproves of or requires revisions to the O&M Plan, in whole or in part, Defendant shall amend and re-Submit to HUD a revised O&M Plan which is responsive to the directions in HUD's comments, within fifteen (15) Days of receiving such comments. The O&M Plan shall be prepared in accordance with Chapters 6 and 17 of the HUD Guidelines.

E.      For each Subject Property not identified as Lead-Based Paint Free, the following Lead-Based Paint Hazard Reduction work shall be performed in the units, common areas, and exteriors of each Subject Property in accordance with the Hazard Reduction Plan and the HUD Guidelines:

(i).      Except as provided in Paragraph 16.E.(ii), within six (6) years after approval of the Hazard Reduction Plan,

a.   All windows, including window sills, not identified as Lead-Based Paint Free or demonstrated to have been installed after 1977 through receipts, Work Orders, Building Permits, or other documentation acceptable to the United States, shall be

13

replaced in accordance with the Hazard Reduction Plan and Chapter 12 of the HUD Guidelines.

b. Abatement of all Friction and Impact Surfaces not identified as Lead-Based Paint Free or demonstrated to have been installed after 1977 through receipts, Work Orders, Building Permits, or other documentation acceptable to the United States.

c. Stabilization of any other non-Friction and non-Impact Surfaces or components.

d. Removal, or HEPA vacuuming and steam cleaning of all carpeting.

e. Rendering of all interior rough, pitted, or porous horizontal surfaces to be smooth and cleanable.

(ii).    Within one (1) year after approval of the Hazard Reduction Plan, bare soil identified on the grounds of each Subject Property shall be covered with a vegetative ground covering, mulch, or other appropriate covering in accordance with Chapter 11 of the HUD Guidelines.

(iii).   Worksite preparation and occupant protection shall be in accordance with Chapter 8 of the HUD Guidelines.

(iv).   Daily and final cleanups shall be in accordance with Chapter 14 of the HUD Guidelines.

(v).    Clearance Examination must be completed by a certified Lead-Based Paint Risk Assessor in each building upon completion of final cleanup in accordance with Chapter 15 of the HUD Guidelines. Within fifteen (15) Days of receipt of the Lead-Based Paint Clearance Examination report ("Clearance Report"), the Defendant shall Submit the Clearance Report to HUD. The Clearance Report shall contain all results of dust samples analyzed at a laboratory recognized by EPA through the National Lead Laboratory Accreditation Program ("NLLAP") as

14

being capable of performing analyses for lead compounds in paint chips, dust, and soil samples, and the results of a visual assessment of work areas and Lead-Based Paint Hazard Reduction work performed.  If the results indicate that clearance is not achieved, Defendant shall repeat the cleaning procedures identified above under Paragraph 16.E.(iv) and repeat dust clearance sampling within fifteen (15) Days of the failed Clearance Examination, and repeat this procedure until clearance has been attained.

      F.     In each of the six (6) years after approval of the Hazard Reduction Plan, Defendant shall make substantial and reasonable progress on the Lead-Based Paint Hazard Reduction Work as set forth in this Consent Decree, and shall detail the progress made in the Annual Report required in Paragraph 18.  The Parties agree that substantial and reasonable progress shall mean completion of at least one-sixth of the total inventory of units in each year. For the purposes of this Consent Decree, units that have been tested in accordance with Chapter 7 of the HUD Guidelines and determined to be Lead-Based Paint Free may be counted towards progress.

      G.     The timelines in this Section shall not apply where Defendant has been notified by a governmental entity or become aware of a unit where a child with an Elevated Blood-Lead Level resides or is a regular visitor (i.e., visits at least two (2) different Days within any week for at least three (3) hours on each Day, and the combined annual visits last at least sixty (60) hours). Defendant shall comply with such notice(s) including the timelines set forth in the notice(s). Additionally, Defendant shall perform all work under this Section and the Hazard Reduction Plan in the unit within sixty (60) Days of notification or becoming aware of a unit where a child with an Elevated Blood-Lead Level resides or is a regular visitor.  If exteriors and common areas are required to be treated by any governmental entity, Defendant shall also treat those areas

within sixty (60) Days of notification or becoming aware of a unit where a child with an Elevated Blood-Lead Level resides or is a regular visitor.

H.      Ongoing operations and maintenance ("O&M") in all Subject Properties that are not certified Lead-Based Paint Free shall be implemented at the completion of any Abatement or Interim Control activity, and shall be conducted in accordance with Chapters 6 and 17 of the HUD Guidelines and the O&M Plan.  During reevaluations, Defendant shall ensure that all methods used to enclose or encapsulate all Lead-Based Paint surfaces are still intact and the Abatement and Interim Control methods have not failed.  If any Lead-Based Paint Abatement or Interim Control, or other surface containing Lead-Based Paint has failed or deteriorated, Defendant shall repair the area to the same level in accordance with Chapters 11, 12 and/or 13 of the HUD Guidelines, as applicable, and perform a Clearance Examination within one (1) Month of discovery of the failure.  If Lead-Based Paint dust hazards or bare soil are discovered as part of ongoing reevaluations, Defendant shall address them according to Chapter 11 of the HUD Guidelines.

## VIII. REPORTING REQUIREMENTS

17.      Defendant shall Submit any state, city, and/or county notices received relating to Lead-Based Paint violations at the Subject Properties to HUD and EPA at the relevant address listed in Paragraph 40 within fifteen (15) Days of receipt of such notice.

18.      On or before thirteen (13) Months after approval of the Hazard Reduction Plan and annually thereafter until completion of all work performed under Section VII, Defendant shall Submit to HUD and EPA a written annual report ("Annual Report") covering the previous twelve (12) Month period.  The Annual Report shall include, at a minimum: (a) the status of work performed under Section VII, including any Lead-Based Paint inspection testing or

16

presumption of Lead-Based Paint, the type of Abatement or Interim Controls and components abated or controlled, and a list of the property addresses and units where work has been completed and cleared during that reporting period; (b) the status of ongoing operations and maintenance activities in accordance with Section VII, Paragraph 16.H.; (c) any and all information concerning the cost of Lead-Based Paint inspections, Lead-Based Paint Hazard Reduction Work, including Lead-Based Paint clearance examinations, the source of those funds, and the number of units completed under Section VII; and (d) for the first Annual Report only, copies of any new leases and disclosure forms entered into during the previous twelve Month period at Subject Properties where Lead-Based Paint Hazard Reduction Work has been completed.

19.     Defendant shall ensure contractor compliance with any state, city, and/or county requirements for reporting Lead-Based Paint inspections and Lead-Based Paint Hazard Reduction Work, including Lead-Based Paint clearance examinations, in accordance with the laws of the State of Ohio and local jurisdictions therein.

## IX. QUALIFICATIONS TO CONDUCT LEAD-BASED PAINT WORK

20.     A. All Lead-Based Paint inspections, Lead-Based Paint Hazard Reduction Work, and Lead-Based Paint clearance examinations performed shall be consistent with the HUD Guidelines and conducted by individuals certified to perform the work in accordance with the laws of the State of Ohio. All Lead-Based Paint Hazard Reduction Work shall be supervised by a Lead Supervisor.

B.     Persons performing Interim Controls, visual assessments for O&M, and general maintenance shall be trained in either HUD's one day "Lead Safe Work Practices" class or the HUD/EPA "Remodeling, Repair, and Painting" class. All Interim Control and general

maintenance work, other than minor maintenance and repair, shall be conducted by firms and individuals certified by EPA, or an EPA authorized state, to conduct or direct renovation, remodeling and/or painting work under EPA's Residential Property Renovation Rule, 40 C.F.R. Part 745, Subpart E.

21. Defendant shall ensure that Clearance Examinations are not conducted by the same individual and/or same or affiliated business entity conducting the Lead-Based Paint Hazard Reduction Work that is being evaluated by the Clearance Examination.

22. Defendant shall ensure that Lead-Based Paint inspections are not done by the same individual and/or same or affiliated business entity doing Lead-Based Paint Hazard Reduction Work on the Subject Properties.

## X. STIPULATED PENALTIES

23. In the event that Defendant fails to pay the penalty in a timely manner in accordance with Paragraph 11, fails to comply with any of the terms or provisions of this Consent Decree relating to the submission of plans or performance of the work described in Section VII above or the submission of reports under Section VIII, fails to comply with Paragraphs 8-10 regarding compliance with Section 1018, or uses any funds other than its own as set forth in Paragraph 36, Defendant shall be liable for stipulated penalties according to the provisions set forth below:

A. If the Defendant fails to make timely payment of the penalty provided for in Section VI, Defendant shall be required to pay as stipulated penalties $400 per day. Stipulated penalties shall accrue until such time as the original penalty, any Interest, and all accrued stipulated penalties are paid.

B.    If the Defendant fails to Submit the Hazard Reduction Plan or the O&M Plan,

submit any Lead-Based Paint inspection report(s), if inspections are performed, complete any

Lead-Based Paint Hazard Reduction Work or any clearance examinations, or to conduct O&M as

described in Section VII and in accordance with the deadlines set forth in this Consent Decree,

Defendant shall pay stipulated penalties of $200 per day per violation per each unit until the

inspection report(s), Hazard Reduction Plan, O&M Plan, Lead-Based Paint Hazard Reduction

Work, clearance examinations, and/or O&M is completed.  If any Lead-Based Paint Hazard

Reduction Work fails because of Defendant's failure to follow the Hazard Reduction Plan or

HUD Guidelines and/or conduct O&M as described in Section VII, those Subject Properties shall

not be considered abated or treated in accordance with this Consent Decree and stipulated

penalties shall accrue.

C.    If the Defendant fails to Submit any information or reports to HUD or EPA, as

described in Paragraph 13, Section VII, or Section VIII, in accordance with the requirements

and/or deadlines set forth in this Consent Decree, the Defendant shall pay stipulated penalties of

$200 per day for each day each such submission is deemed inadequate and/or late.

D.    If the Defendant fails to comply with the requirements of Section 1018 and its

implementing regulations, as required by Paragraph 8, to provide tenant disclosure, as required

by Paragraph 9, and/or to provide notice of compliance with a copy of a completed disclosure

form, as required by Paragraph 10, the Defendant shall pay stipulated penalties of $200 per day

for each day the disclosure and/or notice and/or copy of a completed disclosure form is deemed

inadequate and/or late.

E.    If the Defendant fails to use its own funds as set forth in Paragraph 36, or use

HUD Office of Healthy Homes and Lead Hazard Control grant funds for any work at the Subject

Properties or any other Federal, State, or local grant funds or other assistance to do any of the work required in Section VII of this Consent Decree, the Defendant shall pay stipulated penalties in the amount equal to double the amount of the grant funds or other assistance received.

F.　　Payment of stipulated penalties and any applicable Interest shall be made to the United States in the manner set forth in Paragraph 12 of this Consent Decree.  Defendant shall pay the stipulated penalties and any applicable Interest not more than fifteen (15) Days after receipt of written demand by the United States for such penalties.

G.　　If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for Interest on such penalties accruing as of the date payment became due.

24.　　Stipulated Penalties shall accrue regardless of whether the United States has notified the Defendant of the violation or made a demand for payment, but need only be paid upon demand.  All penalties shall begin to accrue on the day after payment or the required activity is due and shall continue to accrue through the date of payment, or until the required activity is performed.  However, the United States may, in its unreviewable discretion, waive or reduce the amount of any Stipulated Penalty.  Nothing herein shall prevent the United States from seeking other relief that may be available for non-compliance, nor prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

## XI. FORCE MAJEURE

25.　　The Defendant shall provide notice orally or by electronic or facsimile transmission to the Civil Division Chief of the United States Attorney's Office as detailed in Section XVII of this Consent Decree (Notice) as soon as possible, but not later than 72 hours after the time the Defendant first knew of, or by the exercise of due diligence, should have

known of, a claimed force majeure event. Defendant shall also provide formal, written notice, as provided in Section XVII of this Consent Decree (Notice), within seven (7) Days of the time the Defendant first knew of, or by the exercise of due diligence, should have known of, the event. The notice shall state the anticipated duration of any delay; its cause(s); the Defendant's past and proposed actions to prevent or minimize any delay and the adverse effects of any delay; a schedule for carrying out those actions; and the Defendant's rationale for attributing any delay to a force majeure event. Failure to provide oral and written notice as required by this Paragraph shall preclude the Defendant from asserting any claim of force majeure.

26. If the United States agrees that a force majeure event has occurred, the United States may agree to extend the time for the Defendant to perform the affected requirements for the time necessary to complete those obligations. An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation. Where the United States agrees to an extension of time, the appropriate modification shall be made pursuant to Section XIX of this Consent Decree (Integration).

27. If the United States does not agree that a force majeure event has occurred, or does not agree to the extension of time sought by the Defendant, the United States' position shall be binding, unless the Defendant invokes Dispute Resolution under Section XII of this Consent Decree. In any dispute involving force majeure, the Defendant bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is in fact a force majeure event; that the Defendant gave the notice required by Paragraph 25 of this Section; that the force majeure event caused any delay Defendant claims was attributable to that event; and that the Defendant exercised best efforts to prevent or minimize any delay and the adverse effects of any delay caused by the event.

21

## XII.  DISPUTE RESOLUTION

28.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce the obligations of the Defendant under this Consent Decree that the Defendant has not timely disputed in accordance with this Section.

29.     Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the Parties. The period for informal negotiations shall not exceed thirty (30) Days from the time the dispute arises, unless it is modified by written agreement of the Parties. The dispute shall be considered to have arisen when one Party sends the other Party a written Notice of Dispute.

30.     If the Parties are not in agreement at the end of this informal negotiations period, the position of the United States shall be controlling unless the Defendant files a petition with the Court for resolution of the dispute within twenty-one (21) Days of receipt of the United States' final position. The petition shall set out the nature of the dispute with a proposal for its resolution. The United States shall have twenty-one (21) Days to file a response with an alternate proposal for resolution. In any such dispute, the Defendant shall have the burden of proving that the United States' proposal is arbitrary and capricious.

31.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect any obligation of the Defendant under this Consent Decree not directly in dispute, unless the United States or the Court agrees otherwise. Stipulated Penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 24. Notwithstanding the stay of payment,

22

Stipulated Penalties, together with Interest, shall accrue from the first day of non-compliance with any applicable provision of this Consent Decree. In the event that the Defendant does not prevail on the disputed issue, Stipulated Penalties shall be assessed and paid, together with Interest, as provided in Paragraph 24.

## XIII. RIGHT OF ENTRY

32.    HUD, EPA and their representatives, contractors, consultants, and attorneys shall have the right of entry into and upon all Subject Properties owned or controlled by the Defendant, at all reasonable times, upon proper presentation of credentials, for the purposes of:

A.    monitoring the progress of activities required by this Consent Decree;

B.    verifying any data or information required to be Submitted pursuant to this Consent Decree;

C.    obtaining samples and, upon request, splits of any samples taken by the Defendant or its consultants (upon request, the Defendant will be provided with splits of all samples taken by the United States); and

D.    otherwise assessing the Defendant's compliance with this Consent Decree.

33.    This Section in no way limits or affects any right of entry and inspection held by the United States, HUD, EPA, and any State, County, or City in which the Subject Property is located pursuant to applicable federal, state or local laws, regulations, or permits.

## XIV.  COVENANT NOT TO SUE

34.    In consideration of the payments required by this Consent Decree and the work to be performed, and except as otherwise provided in this Consent Decree, the United States covenants not to sue or take administrative or other action against the Defendant for the violations of Section 1018 at the Subject Properties alleged in the complaint in this matter

23

through the date of lodging. This covenant not to sue with respect to the Defendant is conditioned upon the complete and satisfactory performance by the Defendant of its obligations under this Consent Decree. This covenant not to sue extends only to the Defendant and does not extend to any other person or business entity.

## XV. PLAINTIFF'S RESERVATION OF RIGHTS

35. The covenant not to sue set forth above does not pertain to any matters other than those expressly specified in Paragraph 34. The United States reserves, and this Consent Decree is without prejudice to, all rights against Defendant with respect to all other matters, including but not limited to, the following:

A. claims based on a failure by the Defendant to meet a requirement of this Consent Decree;

B. claims based upon violations of Section 1018 that occur after the date of lodging of this Consent Decree;

C. criminal liability; and

D. all claims not barred by Paragraph 34 of this Consent Decree.

## XVI. MISCELLANEOUS

36. Defendant hereby certifies that it will use its own funds, and that no HUD Office of Healthy Homes and Lead Hazard Control grant funds will be used for any work at the Subject Properties and that no Federal, State, or local grant funds or other assistance will be used to complete the work required in Section VII.

37. This Consent Decree in no way affects Defendant's responsibilities to comply with all federal, state, or local laws and regulations.

38.    Except as otherwise provided in this Consent Decree, each Party shall bear its own costs and attorneys' fees in this action.

## XVII. NOTICES AND SUBMISSIONS

39.    Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one Party to another, it shall be in writing and directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Party in writing. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of this Consent Decree with respect to the United States and the Defendant.

40.    All notices and reports shall refer to this Consent Decree and the date of entry of the Consent Decree, and shall cite the case name of <u>United States v. Meyer Management, Inc.</u> and the case number.

U.S. Attorney's Office:

Chief, Civil Division
United States Attorney's Office
303 Marconi Blvd., Suite 200
Columbus, OH 43215
(614) 469-5715
(614) 469-2769 (facsimile)

U.S. Department of Justice:

Chief, Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044
D.J. No. 90-5-1-1-10787

U.S. Department of Housing and Urban Development:

Director, Lead Programs Enforcement Division
Office of Healthy Homes and Lead Hazard Control

U.S. Department of Housing and Urban Development
451 7th Street, SW, Room 8236
Washington, DC 20410
(202) 755-1785
(202) 708-4248 facsimile
LEAD.Enforcement@hud.gov

and

John B. Shumway, Assistant General Counsel
Office of General Counsel
U.S. Department of Housing and Urban Development
451 7th Street, SW, Room 9262
Washington, DC 20410

U.S. Environmental Protection Agency

Chief, Pesticides and Toxics Compliance Section
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL 60604

Defendant:

Meyer Management, Inc.
Attn: Terry Meyer
P.O. Box 5486
Cincinnati, OH 45205

and

Jeffrey J. Harmon
Cors & Bassett, LLC
537 E. Pete Rose Way
Suite 400
Cincinnati, OH 45202

41.     Any Party may change either the notice recipient or the address for providing

notices to it by serving all other Parties with a notice setting forth such new notice recipient or

address.

42.     Any notice, report, certification, data presentation, or other document Submitted

by Defendant pursuant to this Consent Decree which discusses, describes, demonstrates, supports

26

any findings, or makes any representation concerning Defendant's compliance or non-compliance with any requirement of this Consent Decree shall be certified by Defendant or a duly authorized representative of Defendant. A person is a "duly authorized representative" only if: (a) the authorization is made in writing; (b) the authorization specifies either an individual or position having responsibility for overall operation of the regulated facility or activity (a duly authorized representative may thus be either a named individual or any individual occupying a named position); and (c) the written authorization is Submitted to the United States consistent with this Paragraph.

43.    The certification required by Paragraph 42, above, shall be in the following form:

>        I certify that the information contained in or accompanying this [type of submission] is true, accurate and complete.    With regard to [the/those identified portion(s)] of this [type of submission] for which I cannot personally verify [its/their] accuracy, I certify under penalty of law that this [type of submission] and all attachments were prepared in accordance with procedures designed to assure that qualified personnel properly gather and evaluate the information submitted.    Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, or the immediate supervisor of such persons, the information submitted is, to the best of my knowledge and belief, true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing violations.

>        Signature:    _____
>
>        Name:        _____
>
>        Title:        _____

## XVIII.  RETENTION OF JURISDICTION

44.    This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XIX.  INTEGRATION

45.     This Consent Decree and its Appendices constitute the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree.  It may not be enlarged, modified, or altered unless such modifications are made in writing and approved by the Parties and the Court.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XX.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

46.     Defendant agrees and acknowledges that this Consent Decree shall be lodged with the Court and a notice of such lodging shall be published in the Federal Register, to allow an opportunity for public comment for at least thirty (30) Days, and consideration of any comments prior to entry of the Consent Decree by the Court.  The United States reserves its right to withdraw consent to entry of this Consent Decree based on comments received during the public notice period.  Defendant consents to entry of this Consent Decree without further notice.

47.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of any Party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XXI.  EFFECTIVE DATE

48.     The effective date of this Consent Decree shall be the date upon which it is entered by the Court.

## XXII.  RECORD RETENTION AND PRESERVATION

49.     Defendant shall preserve, during the pendency of this Consent Decree and for a minimum of at least twelve (12) Months after its termination, all documents and records in its custody, control or possession and in the custody, control or possession of its employees,

agents, assigns, contractors, subcontractors or consultants, which in any manner relate to this

Consent Decree or to the performance of work under this Consent Decree. At the end of this

twelve (12) Month period and at least thirty (30) calendar Days before any document or record

is destroyed, Defendant shall notify and make available to the United States such documents

and records, or shall provide the originals or accurate, true and complete copies of such

documents and records to the United States. Defendant shall not destroy any document or

record to which the United States has requested access for inspection or copying until the

United States has obtained such access or copies or withdrawn its request for such access or

copies.

## XXIII. SIGNATORIES/SERVICE

50.     Each undersigned representative of the United States and Defendant certifies that

he or she has reviewed this Consent Decree, and had the opportunity to have this Consent

Decree reviewed by counsel, and is authorized to enter into the terms and conditions of this

Consent Decree and to execute and bind legally such Party to this document.

51.     Defendant hereby agrees not to oppose entry of this Consent Decree by this

Court or to challenge any provision of this Consent Decree, unless the United States has notified

Defendant in writing that it no longer supports entry of the Consent Decree based on public

comments received pursuant to Paragraph 46 above.

52.     Defendant agrees that the person identified on its behalf under Section XVII is

authorized to accept service of process by mail on behalf of Defendant with respect to all

matters arising under or relating to this Consent Decree. Defendant hereby agrees to accept

service by certified mail in that manner and to waive the formal service requirements set forth in

Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court,

including but not limited to, service of a summons.

53.     Upon approval and entry of this Consent Decree by the Court, the Consent Decree shall constitute a final judgment pursuant to Rules 54 and 58 of the Federal Rule of Civil Procedure.

## XXIV. TERMINATION

54.     This Consent Decree shall terminate after all of the following have occurred:

A.     Defendant has completed all work required by this Consent Decree.

B.     Defendant has paid all penalties and Interest due under this Consent Decree and no penalties are outstanding or owed to the United States;

C.     Defendant has certified compliance with the terms and conditions of this Consent Decree to the United States; and

D.     The United States has not disputed Defendant's certification. If the United States disputes Defendant's certification, the Consent Decree shall remain in effect pending resolution of the dispute by the Parties or the Court. If the United States does not contest the certification, the United States shall petition or the Parties shall jointly petition the Court to terminate the Consent Decree.

## XXV. FINAL JUDGMENT

55.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court in this action between and among the United States and the Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Rules 54 and 58 of the Federal Rule of Civil Procedure.

So entered in accordance with the foregoing this _6TH_ day of _October_ 2014.

_Timothy S. Black_

UNITED STATES DISTRICT COURT JUDGE

United States v. Meyer Management, Inc.

THE UNDERSIGNED PARTIES enter into this Consent Decree in the above matter, relating to the sites enumerated in this Consent Decree:

FOR PLAINTIFF, UNITED STATES OF AMERICA:

SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Resources Division


Date    8/11/14

W. BENJAMIN FISHEROW
Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

United States v. Meyer Management, Inc.

FOR PLAINTIFF, UNITED STATES OF AMERICA:

CARTER M. STEWART
United States Attorney


MARK T. D'ALESSANDRO (0019877)                    Date  8 | 8 | 14
Civil Chief
ANDREW M. MALEK (0061442)
Assistant United States Attorney
303 Marconi Blvd.
Suite 200
Columbus, OH 43215
(614) 469-5715

<u>United States v. Meyer Management, Inc.</u>

FOR UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT:


_____     Date_____8.7.14_____

**KEVIN M. SIMPSON**
Associate General Counsel for the Office of
Finance and Administrative Law


_____     Date___8 / 7 / 14_____

**JOHN B. SHUMWAY**
Assistant General Counsel for Administrative Law
U.S. Department of Housing and Urban Development
451 7th Street, SW, Room 9262
Washington, DC 20410
(202) 402-5190

United States v. Meyer Management, Inc.

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


Date August 15, 2014

SUSAN HEDMAN
Regional Administrator
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL 60604


Date August 11, 2014

ROBERT A. KAPLAN
Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL 60604


Date August 5, 2014

MARY T. McAULIFFE
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL 60604
(312) 886-6237

United States v. Meyer Management, Inc.:

FOR MEYER MANAGEMENT, INC.:


_Terry Meyer_                          Date _8/1/14_
TERRY MEYER, President

## APPENDIX 1: SUBJECT PROPERTY LIST

(Subject Properties with Street Addresses, Number of Units,
and Year of First Construction)

|      | Address          | Number of Units | Construction date |
|------|------------------|-----------------|-------------------|
| 1.   | 2210 Amor        | 1               | 1865              |
| 2.   | 1114 Beech       | 3               | 1905              |
| 3.   | 6484 Betts       | 1               | 1952              |
| 4.   | 2608 Bushnell    | 1               | 1904              |
| 5.   | 1137 Carson      | 1               | 1880              |
| 6.   | 781/85 Clanora   | 9               | 1948              |
| 7.   | 3914 Clerose     | 4               | 1957              |
| 8.   | 540/42 Considine | 2               | 1905              |
| 9.   | 1021 Considine   | 1               | 1900              |
| 10.  | 427 Crestline    | 1               | 1920              |
| 11.  | 3725 Darwin      | 2               | 1904              |
| 12.  | 648 Delhi        | 1               | 1889              |
| 13.  | 1032 Delmonte    | 1               | 1919              |
| 14.  | 1234 Dewey       | 1               | 1890              |
| 15.  | 1625 Dewey       | 1               | 1906              |
| 16.  | 8423 Dixie       | 1               | 1941              |
| 17.  | 1617 Dorothy     | 1               | 1946              |
| 18.  | 1618 Dorothy     | 1               | 1941              |
| 19.  | 462 Elberon      | 1               | 1931              |
| 20.  | 971 Elberon      | 1               | 1880              |
| 21.  | 538 Enright      | 4               | 1900              |
| 22.  | 933 Enright      | 2               | 1913              |
| 23.  | 963 Enright      | 2               | 1903              |
| 24.  | 965 Enright      | 2               | 1903              |
| 25.  | 1258 First       | 2               | 1913              |
| 26.  | 2822 Glenway     | 1               | 1915              |
| 27.  | 2908 Glenway     | 1               | 1915              |
| 28.  | 3507 Glenway     | 1               | 1915              |
| 29.  | 3531 Glenway     | 2               | 1925              |
| 30.  | 3633 Glenway     | 2               | 1893              |
| 31.  | 4536 Glenway     | 2               | 1900              |
| 32.  | 941 Grand        | 3               | 1908              |
| 33.  | 947 Grand        | 17              | 1969              |
| 34.  | 4401 Grove       | 1               | 1947              |
| 35.  | 1719 Harrison    | 1               | 1928              |
| 36.  | 1721 Harrison    | 1               | 1928              |
| 37.  | 1973 Harrison    | 1               | 1915              |
| 38.  | 1996 Harrison    | 2               | 1885              |

37

| 39. | 658 Hawthorne | 3 | 1890 |
|-----|---------------|---|------|
| 40. | 811 Hawthorne | 2 | 1910 |
| 41. | 1218 Iliff | 3 | 1918 |
| 42. | 1220 Iliff | 2 | 1907 |
| 43. | 1224 Iliff | 1 | 1870 |
| 44. | 814 Kirbert | 3 | 1926 |
| 45. | 3741 Laclede | 1 | 1954 |
| 46. | 3752 Laclede | 2 | 1884 |
| 47. | 1143 Mansion | 1 | 1957 |
| 48. | 1230 Manss | 2 | 1930 |
| 49. | 1239 Manss | 2 | 1905 |
| 50. | 1263 Manss | 2 | 1890 |
| 51. | 1310 Manss | 2 | 1910 |
| 52. | 1433 Manss | 1 | 1907 |
| 53. | 1435 Manss | 1 | 1916 |
| 54. | 3608 Maria | 1 | 1923 |
| 55. | 1040 Marshall | 3 | 1900 |
| 56. | 1214 Mckeone | 1 | 1931 |
| 57. | 918 Mcpherson | 1 | 1931 |
| 58. | 921 Mcpherson | 2 | 1887 |
| 59. | 922 Mcpherson | 2 | 1905 |
| 60. | 966 Mcpherson | 1 | 1885 |
| 61. | 968 Mcpherson | 2 | 1885 |
| 62. | 1024 Mcpherson | 1 | 1917 |
| 63. | 1026 Mcpherson | 2 | 1900 |
| 64. | 1117 Mcpherson | 2 | 1900 |
| 65. | 1123 Mcpherson | 1 | 1890 |
| 66. | 116 Meridian | 1 | 1904 |
| 67. | 1621 Minion | 1 | 1950 |
| 68. | 1751 Montrose | 1 | 1885 |
| 69. | 1912 Montrose | 1 | 1885 |
| 70. | 1233 Neff | 1 | 1915 |
| 71. | 957 Oakland | 1 | 1914 |
| 72. | 963 Oakland | 1 | 1913 |
| 73. | 580 Orchardview | 1 | 1937 |
| 74. | 472 Purcell | 1 | 1916 |
| 75. | 3718 Quante | 1 | 1950 |
| 76. | 1234 Quebec | 1 | 1900 |
| 77. | 2050 Queen City | 1 | 1921 |
| 78. | 279 Renner | 1 | 1865 |
| 79. | 2595 Ring | 1 | 1905 |
| 80. | 838 Rosemont | 1 | 1895 |
| 81. | 1212 Rosemont | 1 | 1930 |
| 82. | 1214 Rosemont | 1 | 1929 |
| 83. | 1210 Ross | 2 | 1900 |

| 84. | 1212 Ross | 1 | 1905 |
|---|---|---|---|
| 85. | 1214 Ross | 1 | 1872 |
| 86. | 1602 Ross | 1 | 1920 |
| 87. | 1603 Ross | 1 | 1926 |
| 88. | 4015 St. Lawrence | 1 | 1915 |
| 89. | 1139 Seton | 3 | 1911 |
| 90. | 710 State | 2 | 1910 |
| 91. | 927 State | 2 | 1895 |
| 92. | 929 State | 2 | 1880 |
| 93. | 1900 State | 2 | 1885 |
| 94. | 1014 Sturm | 1 | 1896 |
| 95. | 1016 Sturm | 1 | 1896 |
| 96. | 819 Summit | 1 | 1897 |
| 97. | 910 Summit | 1 | 1879 |
| 98. | 1964 Sunset | 1 | 1964 |
| 99. | 215 Symmes | 1 | 1923 |
| 100. | 611 Tafel | 1 | 1890 |
| 101. | 808 Terry | 1 | 1956 |
| 102. | 811 Terry | 1 | 1922 |
| 103. | 836 Terry | 2 | 1922 |
| 104. | 579 Trenton | 1 | 1953 |
| 105. | 926 Voss | 1 | 1910 |
| 106. | 3512/14 Warsaw | 3 | 1900 |
| 107. | 3522 Warsaw | 1 | 1870 |
| 108. | 3537 Warsaw | 2 | 1900 |
| 109. | 3539 Warsaw | 2 | 1900 |
| 110. | 3626 Warsaw | 2 | 1893 |
| 111. | 975 Wells | 1 | 1890 |
| 112. | 979 Wells | 1 | 1895 |
| 113. | 1017 Wells | 1 | 1885 |
| 114. | 3419 W. Eighth | 2 | 1905 |
| 115. | 3509 W. Eighth | 1 | 1885 |
| 116. | 3600 W. Eighth | 2 | 1900 |
| 117. | 3606 W. Eighth | 2 | 1916 |
| 118. | 3612 W. Eighth | 1 | 1914 |
| 119. | 3903 W. Liberty | 1 | 1880 |
| 120. | 1737 Westwood | 1 | 1880 |
| 121. | 1741 Westwood | 1 | 1880 |
| 122. | 722 Woodlawn | 1 | 1927 |
| 123. | 730 Woodlawn | 1 | 1930 |
| 124. | 733 Woodlawn | 1 | 1915 |
| 125. | 741 Woodlawn | 2 | 1917 |
| 126. | 742 Woodlawn | 1 | 1928 |
| 127. | 967 Woodlawn | 1 | 1923 |
| 128. | 1642 Wyoming | 2 | 1932 |

| 129. | 2098 Yoast | 1 | 1925 |
|------|-----------|---|------|
| 130. | 5858 Pleasant | 1 | |
| 131. | 5335 Mississippi | 1 | 1957 |
| 132. | 1994 Harrison | 2 | 1880 |
| 133. | 1812 Queen City | 2 | 1890 |
| 134. | 1239 Ross | 2 | 1905 |
| 135. | 1606 Ross | 2 | 1927 |
| 136. | 5136 Valley Ridge | 1 | |

**TOTAL UNITS - 224**